**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BART MAVERICK YAGLA, JR.,      )
                                   )
          Plaintiff,           )       Civil Action No. 2:14-cv-181
                                   )
          v.                    )       District Judge Arthur J. Schwab
                                   )
KENNETH SIMON; CITY OF      )       Magistrate Judge Lisa Pupo Lenihan
PITTSBURGH; and COUNTY      )
OF ALLEGHENY,             )       ECF Nos. 55 and 57
                                   )
          Defendants.      )

## REPORT AND RECOMMENDATION

**LENIHAN**, **United States Magistrate Judge**

### I.    RECOMMENDATION

It is respectfully recommended that: (a) the motion to dismiss the Second Amended Complaint filed by the City of Pittsburgh (ECF No. 55) be granted, and (b) the consolidated motion to dismiss and/or to strike portions of the Second Amended Complaint filed by the County of Allegheny (ECF No. 57) be granted as to the County's motion to dismiss and denied as to the County's motion to strike. It is further recommended that Plaintiff's §1983 claims be dismissed *with* prejudice, to the extent they are premised on:

    (i)      alleged violations of the Fifth Amendment;

    (ii)    alleged violations of the Eighth Amendment;

    (iii)   alleged violations of the Fourteenth Amendment Equal Protection Clause;

    (iv)   alleged violations of the Fourteenth Amendment Due Process clause arising from: (a) the withdrawal of a potential plea offer; (b) the Commonwealth's reliance on officer Scarpane's testimony; (c) the *nolle prossing* of Plaintiff's criminal charges; and (d) the violation of a Rule of Professional Responsibility; and

1

(v)     alleged violations of the Fourth Amendment arising from:  (a) Plaintiff's false arrest; (b) Plaintiff's false imprisonment; and (c) a judicial officer's probable cause determination.

Finally, it is recommended that the following §1983 claims be dismissed *without* prejudice:  (i) Plaintiff's Fourth Amendment malicious prosecution claim; (ii) Plaintiff's Fourteenth Amendment due process claim premised upon an alleged fabrication of evidence and/or *Brady* violation; and (c) Plaintiff's municipal liability claims.

## II.     REPORT

### A.     **Background Facts**

Plaintiff Bart Maverick Yagla ("Yagla") filed this civil rights action after being arrested and prosecuted in the Allegheny Court of Common Pleas for drug-related offenses that were eventually *nolle prossed*.  The state trial court summarized the background facts and procedural history of Plaintiff's criminal case as follows:

> On February 15, 2009, Officer Kenneth L. Simon, a sixteen-year veteran of the Pittsburgh Police Department, was on routine patrol with his partner in a marked vehicle in the Northside Section of the City of Pittsburgh.  As they approached Sorrell Street, near its intersection with Marshall Avenue, they noticed a parked vehicle with two occupants, which was in front of a vacant lot.  Officer Simon, who had made numerous drug arrests in this area, became curious as to why this vehicle would be parked in front of a vacant lot at one o'clock in the afternoon.  He and his partner then ran the license plate that was on this vehicle to determine that the car was registered to an individual who lived in Connellsville, Pennsylvania.  Officer Simon and his partner decided to talk to the individuals in this car and as they approached, they noticed that the two individuals were looking in their laps.  As they got closer to the vehicle, [Yagla] and his passenger, William Fryer, noticed them and then began to move frantically inside the car. [1]  When Officer Simon got to the driver's window, he noticed several stamp bags of what he believed to be heroin in [Yagla's] lap and he also observed a needle and spoon at the feet of both the driver and the passenger, in addition to several other empty stamp bags.  Immediately upon seeing these items, [Yagla] and Fryer were removed from the car and arrested.  During the subsequent search of [Yagla], Officer Simon found an additional thirty-two bags of suspected heroin.  During the search of Fryer, nothing else was found on him and the police uncuffed him and released him with a summons for possession of heroin.  When

---

[1] Officer Simon testified that it was at this point that he and his partner drew their firearms and ordered the occupants of the vehicle to show their hands.  N.T., 8/27/09, at 5.

[Yagla] heard this, he asked the police [why] they were not taking Fryer with them since half of the bags that were found on [Yagla] were allegedly Fryer's.

[Yagla] filed a motion to suppress and at the time of hearing on that motion, only Officer Simon testified. That motion was then denied and the defense and the Commonwealth entered into a stipulation to incorporate the testimony given at the time of the suppression hearing into a non-jury trial. In addition, [Yagla] and the District Attorney stipulated to the Crime Lab report which indicated that the items tested by the Crime Lab had a gross weight of one point zero seven grams and tested positive for being heroin, a Schedule I controlled substance. The Commonwealth's only other witness in this non-jury trial was Anthony J. Scarpine, III, who is a seventeen-year police veteran, spending the last fifteen years with the Pittsburgh Police Department. Officer Scarpine was called so that he could offer an opinion as to whether or not [Yagla] possessed the heroine found on him for the purpose of intending to deliver to another party. During the hypothetical question that was being asked of him, Officer Scarpine asked several questions in his attempt to clarify the facts of [Yagla's] case. In particular, he asked whether or not Fryer had any stamp bags on him and further, whether or not the markings on the stamp bags were the same for both Fryer and [Yagla], to which the District Attorney said yes, the markings on all of the stamp bags were "Star Legend". Based upon this information and the other information provided to him in the hypothetical question, Officer Scarpine was of the opinion that [Yagla] possessed heroin for the purpose of delivering it to another individual.

Trial Court Opinion, 9/22/10, at 3-4 (footnote added).

[Yagla] was convicted of one count of possession with intent to deliver a controlled substance, one count of possession of a controlled substance, one count of tampering with evidence and one count of possession of drug paraphernalia on August 27, 2009. [Yagla] was sentenced on that date to a mandatory period of incarceration of not less than two nor more than four years to be followed by a period of probation of two years during which he was to undergo random drug screening. [Yagla] filed a timely appeal to the Superior Court and was directed, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), to file a concise statement of matters complained of on appeal.

Trial Court Opinion, 9/22/10, at 2.

*Commonwealth v. Yagla,* No. 1608 WDA 2009 at 1-3 (Pa. Super. Ct. Aug. 4, 2011) (attached as

Ex. B to Second Am. Compl., ECF No. 52-2) (footnote 1 and alteration in the original; all other

alterations added).

In his direct appeal from his state court conviction, Yagla challenged the validity of

Officer Simon's investigative detention and subsequent search of his vehicle, claiming that the

detention was not supported by an objectively reasonable suspicion of criminal activity.

*Commonwealth v. Yagla, supra,* at 4 ("In Appellant's first issue, he challenges the ruling of the suppression court and claims that the police officers lacked reasonable suspicion.").  The Superior Court sustained this challenge, reasoning as follows:

> Here, the record reflects that at one o'clock in the afternoon, the officers saw a legally-parked car on a city street in a high drug trafficking area.  The car was parked in front of a vacant lot, but it had a current registration tag and was not reported as stolen.  The officers opted to approach the occupied vehicle, and they then saw frantic movement from the passengers.  It was at this point that the officers drew their weapons and ordered [Yagla] and his cohort to show their hands, seizing [Yagla].  It was not until [Yagla] was seized that the officers arrived at the car door and saw the suspected narcotics and paraphernalia.
>
> After careful review, we note that in the instant case, the police officers, similar to those in [*Commonwealth v. McClease,* 750 A.2d 320 (Pa. Super. Ct. 2000)], had even less information than did the officers in [*Commonwealth v. DeWitt,* 608 A.2d 1030 (Pa. 1992)].  Here, it was one o'clock in the afternoon, and the officers did not have the information regarding criminal activity in the area or flight, as did the officers in **DeWitt.** In the instant case, the officers drew their weapons and ordered [Yagla] and his friend to show their hands **prior** to the discovery of anything that would amount to reasonable suspicion.  We conclude that no reasonable person would have believed that they were free to leave once the officers drew their weapons and shouted commands. … Accordingly, we conclude that [Yagla] was seized without reasonable suspicion.  Thus, we are constrained to reverse the order denying suppression, reverse the judgment of sentence, and remand this matter to the trial court. …

*Commonwealth v. Yagla,* 1608 WDA 2009, at 11-12 (emphasis in the original) (internal citations omitted).

After the Pennsylvania Supreme Court denied the Commonwealth's petition for allowance of an appeal, the Commonwealth moved for a *nolle prosequi* of Yagla's criminal charges.  (Second Am. Compl., Ex. B, at pp. 7-8, ECF No. 52-1; *id.,* Ex. C, ECF No. 52-3.)  The Court of Common Pleas granted the Commonwealth's motion, and the case was *nolle prossed* on February 6, 2012.  (*Id.,* Ex. C.)

### B.  Procedural History

#### 1.  The Original Complaint

Following the dismissal of his criminal charges, Yagla commenced this civil action on February 10, 2014, with the filing of his motion for leave to proceed *in forma pauperis* and an accompanying complaint. (ECF No. 1 and 1-2.) Yagla's original complaint named as defendants Officer Simon and the Allegheny County District Attorney's Office (the "DA's Office") (ECF No. 1-2 and 3) and asserted claims for "Malicious prosecution, False Imprisonment, Mental pain and Anguish, and Punitive damages" (*id.* at ¶ III).

On April 24, 2014, the DA's Office filed a motion to dismiss the complaint on the grounds that: (A) it is not an entity for purpose of §1983 liability, (B) Yagla had not alleged an unconstitutional policy implemented by the DA's Office; (C) the office is immune for liability relative to any malicious prosecution claim; (D) Yagla did not allege the involvement of the DA's Office in his arrest; and (E) the complaint was untimely. (ECF Nos. 12 and 13.) This motion was rendered moot when Yagla filed his First Amended Complaint (ECF No. 22) on June 3, 2014.

2. The First Amended Complaint

In his First Amended Complaint ("FAC"), Yagla named as defendants Officer Simon, the City of Pittsburgh, and Allegheny County; the District Attorney's Office was not identified as a defendant in the FAC and was therefore terminated from the case. Yagla's FAC expanded his constitutional tort theories to include alleged violations of his rights under the 4th, 5th, 8th, and 14th Amendments of the U.S. Constitution. (FAC ¶ III, ECF No. 22.)

On July 21, 2014, the County filed a consolidated motion to strike certain declarations that Yagla had filed in support of the FAC and to dismiss the claims against the County (ECF No. 34). In support of its motion to dismiss, the County argued that: (i) Yagla had failed to allege facts supportive of a municipal liability theory; (ii) Yagla's claims based upon alleged

violations of the 5th, 8th, and 14th Amendments to the U.S. Constitution should be construed and addressed instead as claims based upon alleged 4th Amendment violations; and (iii) the claims in the FAC were untimely because the lawsuit had been filed outside of the applicable statute of limitations.  (Def.'s Br. Supp. Mot. to Dismiss at pp. 3-7, ECF No. 35.)

### 3.  The Second Amended Complaint

On September 15, 2014, with leave of this Court, Yagla filed his Second Amended Complaint ("SAC") (ECF No. 52), which is currently the operative pleading in this case.  Like the FAC, the SAC names Officer Simon, the City of Pittsburgh, and the County of Allegheny as defendants; however, Plaintiff's SAC elaborates on the procedural history and outcome of his criminal case (*see* SAC, "Statement of Claim" ¶¶ 1-16) and offers more expansive averments concerning the claims against each of the named defendants.

The SAC's "Statement of Claim" alleges that, on the day in question, Yagla was legally parked in a spot adjacent to his friend's house, where he had been visiting.  (SAC, "Statement of Claim" ¶1, ECF No. 52.)  After Yagla and a friend got into Yagla's legally registered vehicle, Yagla noticed a marked police car approaching.  (*Id.*)  The police car drifted back and forth a few times alongside Yagla's vehicle, then pulled in front of Yagla's car, as if it were leaving.  Yagla then started his car in an attempt to leave, at which point the police car stopped about two car lengths in front of Yagla's vehicle, blocking the roadway ahead.  (*Id.*)  At this point, according to the SAC:

1.  ... [Officer Simon] and his partner drew there [sic] weapons and ordered plaintiff and his friend to show their hands.  Plaintiff and his friend complied, not understanding what was going on.  ... Upon reaching plaintiffs [sic] vehicle and with there [sic] weapons still drawn, Officer Simon stated "drugs" to his partner.  His partner appeared to be confused at first but went along with Officer Simon.  Officer Simon and his partner then opened plaintiffs [sic] car doors and physically pulled both plaintiff and his friend out of the vehicle.  Once outside the vehicle, both Officer Simon and his partner searched the plaintiff and his friends [sic]

person.  Plaintiff was found to have on his person 32 stamped bags of herion [sic].
Plaintiff was then placed in handcuffs and put inside of the police car.  Plaintiffs
[sic] friend was found to have nothing on his person and was ordered to standby
[sic] while Officer Simon and his partner searched plaintiffs [sic] vehicle.  Upon
searching plaintiffs [sic] vehicle, Officer Simon and his partner found drug
paraphenila [sic] underneath both the driver and passenger seats.  At this time,
back up officers arrived, Plaintiffs [sic] friend was released from the scene with a
summons for possession.  Plaintiff's car was towed to the police impound and
plaintiff was taken to the Allegheny County Jail.

2.  Once at the Allegheny County Jail, plaintiff was placed in a holding cell, where
he was detained, awaiting a criminal complaint/charges and a preliminary
arraignment. While plaintiff was being detained, Officer Simon drafted his
version of plaintiffs [sic] arrest and submitted a sworn affidavit of probable cause
to a judicial official of Allegheny County.

(SAC, "Statement of Claim," ¶¶ 1-2.)  According to Yagla, Simon's sworn affidavit "withheld

detailed information" and "contained false statements/accusations that were fabricated and

misleading to produce probable cause to arrest plaintiff." (SAC, "Legal Claims as for Defendants

Officer Simon and the City of Pittsburgh" ¶ 3, ECF No. 52.)  This falsified affidavit then became

the "initial motivating factor in prosecution" (*id.* ¶ 4), which involved criminal charges of

possession with intent to deliver heroin, possession of heroin, tampering with evidence, and

possession of drug paraphernalia.  (SAC, Ex. A at p. 2, ECF No. 52-1.)

The SAC alleges that, at the time of his preliminary hearing, Yagla's public defender

indicated that the prosecution might permit Yagla to plead to a charge of simple possession due

to concerns about "sufficient probable cause for the arrest" and "the sufficiency of [evidence

relative to Yagla's] intent to deliver."  (SAC, "Statement of Claim," ¶ 5.)  Yagla subsequently

learned that the plea offer was revoked at the behest of Simon, who wanted the case to be

prosecuted as it was originally charged.  (*Id.*)

Yagla later filed a motion to suppress the evidence "in an attempt to again address the

sufficiency of probable cause."  (SAC, "Statement of Claim," ¶ 6.) A suppression hearing was

held on August 27, 2009, at which time "Officer Simon testified as to when he drew his weapon, his reasons for his actions, and what was revealed during his search of plaintiff and his vehicle." (*Id.* ¶ 7.)  Based on Simon's testimony, the trial court denied the suppression motion.  (*Id.*)  Yagla then proceeded to a bench trial, which resulted in his conviction and a sentence of 2 to 4 years of incarceration, to be followed by a two-year period of probation.  (*Id.* ¶¶ 8-9.)

As is recounted in the Superior Court's decision, Yagla appealed his judgment of conviction and sentence, which resulted in the reversal of the suppression ruling and a *nolle prosse* of all criminal charges on February 6, 2012.  (SAC, "Statement of Claim," ¶¶ 10-14.)  On February 9, 2012, "after speaking with plaintiff, counsel for plaintiff[ ] filed acknowledgement of this outcome and the penalty was considered satisfied."  (*Id.* ¶ 15.)  On February 14, 2012, "after being imprisoned threwout [sic] this whole process, plaintiff was released from state custody..." (*Id.* ¶16.)

Based on the foregoing events, Yagla alleges that the Defendants violated his rights under Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.  (SAC, "Legal Claims as for Defendants Officer Simon and the City of Pittsburgh" ¶8; *id.*, "Legal Claims as for Defendant Allegheny County, ¶15.)  His claims against Simon are premised on:  (i) Simon's "illegal" and "malicious" actions in seizing and arresting him (SAC, "Legal Claims as for Defendants Officer Simon and the City of Pittsburgh," ¶2, ECF No. 52); (ii) Simon's submission of a sworn affidavit that allegedly "withheld detailed information" and contained false information that was "fabricated and misleading to produce probable cause" to arrest and prosecute Yagla (*id.* ¶¶ 3-4); (iii) Simon's role in undermining a potential plea deal pursuant to which Yagla would have pled guilty to non-felony charges (*id.* ¶ 5); and (iv) Simon's "malicious" and "misleading" testimony to the trial court about the surrounding circumstances of

the arrest (*id.* ¶ 6). Yagla's claims against the City of Pittsburgh are based on the averment that the City employed Simon but "failed to correct Officer Simons [sic] actions and misconduct pertaining to plaintiffs [sic] arrest." (SAC, "Legal Claims as for Defedants Officer Simon and the City of Pittsburgh" ¶7.)

Yagla's claims against the County of Allegheny are based partly on the actions of an unidentified judicial official who allegedly made a determination of probable cause and issued an arrest warrant where sufficient probable cause was objectively lacking. (SAC "Legal Claims as for Defendant Allegheny County ¶¶ 2-3.) The claims against the County are also premised on the following actions of the District Attorney's office: (i) prosecuting the case at the preliminary hearing stage and beyond (*id.* ¶¶ 4-5); (ii) withdrawing a potential plea deal at the request of Defendant Simon (*id.* ¶6); (iii) failing to drop the charges after being presented with Yagla's motion to suppress and hearing Simon's testimony about when he drew his weapon and "seized" Yagla (*id.* ¶¶7-8); (iv) allowing Simon's "known partner," Officer Scarpane, to testify as an expert in narcotics trafficking at Yagla's trial and "offering a hypothetical scenario to Officer Scarpane and the courts" (*id.* at ¶¶ 9-10); (v) maliciously appealing the Superior Court's reversal of the trial court's suppression ruling (*id.* ¶11); (vi) maliciously *nolle prossing* the charges on February 6, 2012 (*id.* ¶12); and (vii) violating the Pennsylvania Rules of Professional Conduct by failing to disclose exculpatory information –namely, Simon's testimony about when he drew his weapon and "seized" Yagla (*id.* ¶¶13-14). Yagla claims that Allegheny County officials and the DA's office, "knowingly or having the capability of knowing the surrounding circumstances" of Yagla's arrest, did not act objectively reasonably and were "negligent and erroneous in determining sufficient probable cause," thereby violating his federal constitutional rights. (*Id.* ¶15.)

4. <u>The Pending Motions</u>

On September 29, 2014, the City of Pittsburgh filed its pending motion to dismiss the complaint (ECF No. 55) and supporting brief (ECF No. 56). The City's motion is based on the assertion that Yagla has failed to allege any facts that would support a finding of municipal liability in this action. That same day, the County filed its motion to dismiss and/or strike portions of the SAC (ECF No. 57). The County's motion asks that this Court: (a) dismiss the SAC for failure to allege facts that support a finding of municipal liability; (b) dismiss Yagla's malicious prosecution claim because Yagla has not established that the County had any motive for prosecuting him other than bringing him to justice; (c) dismiss or strike all allegations or claims involving prosecutorial actions by the District Attorney's office because such actions are immune from suit; (d) dismiss or strike all allegations or claims involving any judge because a judge is not a local municipal actor and, in any event, judicial conduct is immune from suit; (e) dismiss any Fourteenth Amendment claims because Yagla must proceed under the Fourth Amendment; (f) dismiss any request for relief under the Fifth and/or Eighth Amendments because Yagla has not stated claims thereunder; and (g) dismissal all claims because they were filed beyond the statute of limitations.

Yagla filed his responses to the pending motions on November 10, 2014 (ECF No. 63) and December 1, 2014 (ECF No. 65). Accordingly, the issues raised in the Defendants' motions are ripe for disposition.

**C. <u>Standard of Review</u>**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state

a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556

(2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–

46 (1957)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (*citing Twombly*, 550 U.S. at 570). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*,

550 U.S. at 556). The Supreme Court further explained:

> [t]he plausibility standard is not akin to a "probability requirement," but it asks for more
> than a sheer possibility that a defendant has acted unlawfully. … Where a complaint
> pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the
> line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (*citing Twombly*, 550 U.S. at 556–57) (internal citation omitted).

In *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir.2009), the United States Court of

Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny*, 515 F.3d

224, 232–33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and described how the

Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a
> motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by
> mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. To prevent
> dismissal, all civil complaints must now set out "sufficient factual matter" to show that
> the claim is facially plausible. This then "allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The
> Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations
> of his or her complaints are plausible. *See Id.* at 1949–50; *see also Twombly*, 505 U.S. at
> 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, in light of *Iqbal*, the *Fowler* court set forth a two-prong test to be applied by

the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court
> must accept all of the complaint's well-pleaded facts as true, but may disregard any legal
> conclusions. [*Iqbal*, 129 S. Ct. at 1949]. Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show that the plaintiff has a

"plausible claim for relief." *Id*. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*Fowler*, 578 F.3d at 210–11 (emphasis added).

Although the case is before the District Court on Defendants' respective Rule 12(b)(6) motions, the Court also has the authority, under 28 U.S.C. §1915(e) (as amended), to review complaints filed by persons who are proceeding *in forma pauperis* and, notwithstanding any portion of the filing fee that may have been paid, dismiss at any time an action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B). In determining whether a claim fails to state a claim upon which relief may be granted for purposes of §1915(e)(2)(B), courts apply the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *D'Agostino v. CECOM RDEC*, 436 F. App'x 70, 72 (3d Cir. 2011) (*citing Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir.1999)).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (*quoting Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir.1999)). *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) ("Since this

is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (*quoting Higgins*, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir.2002); *Riddle v. Mondragon*, 83 F.3d 1197, 2102 (10th Cir.1996).

## D. Discussion

Pursuant to 42 U.S.C. § 1983, private citizens are afforded a means to redress violations of federal law committed by state actors. In pertinent part, § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. ...

*Id*. Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996). To establish a Section 1983 claim, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States ... by a person acting under color of state law." *Id*. (*quoting Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)). Since there is no dispute that Officer Simon was acting under color of state law at all times relevant to this litigation, and since the City of Pittsburgh and County of Allegheny are municipalities which may be sued under §1983, this Court's analysis will focus on whether Yagla has alleged a plausible violation of his federal rights and, if so, whether Yagla has pled a plausible basis for holding the City and/or County liable for that violation. *See Bittner v. Snyder County, PA,* 345 F. App'x 790, 793 (3d Cir. 2009) (a necessary predicate for a §1983 municipal liability claim is a constitutional violation).

### 1. Yagla's Fifth Amendment Claims

We first consider Yagla's claims under the Fifth Amendment which provides, in relevant part, that "[n]o person shall be …deprived of life, liberty, or property without due process of law…" U.S. CONST. amend V. It is axiomatic that "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action." *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir.1983). None of the named defendants in this lawsuit are federal actors. Consequently, Yagla cannot assert a viable §1983 claims against the named Defendants based on a Fifth Amendment violation. *See, e.g., Leventry v. Watts*, Civil Action No. 06-193, 2007 WL 1469038, at *2 (W.D. Pa. May 17, 2007) ("[T]he Fifth Amendment restricts the actions of federal officials, not state actors."); *Kopchinski v. Green*, Civil Action No. 05-6695, 2006 WL 2228864, at *1 (E.D. Pa. Aug. 2, 2006) (dismissing plaintiff's Fifth Amendment claims because all of the defendants were state actors).

In his brief in opposition to the County's motion, Yagla indicated that he is withdrawing his Fifth Amendment claims against the County. (Pl.'s Br. Opp. Def.'s Mot. Dismiss at 9, ECF No. 65.) In light of this representation and the obvious inapplicability of the amendment to the facts of this case, it is respectfully recommended that all of Yagla's Fifth Amendment claims against the various Defendants be dismissed with prejudice.

### 2. Yagla's Eighth Amendment Claims

The Eight Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. amend. VIII. Yagla claims that his Eighth Amendment rights were violated by virtue of his "illegal detention, pre and post, cruel and unusual." (SAC, Legal Claims As for Defendant Allegheny County at ¶15; *see id.,* Legal Claims as for Defendants Officer Simon and the City of Pittsburgh ¶ 8 (alleging 8th

amendment violation "under illegal detention, cruel and unusual…".) The SAC does not make clear what is meant by Yagla's reference to "pre" and "post," but the Court assumes he is challenging both his pre-conviction and his post-conviction confinement as "cruel and unusual" punishment.

The Cruel and Unusual Punishment Clause of the Eighth Amendment "was designed to protect those convicted of crimes," *Ingraham v. Wright,* 430 U.S. 651, 664 (1977), and, thus, its protections apply "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Id.* at 671 n.40. Accordingly, to the extent that Yagla's Eighth Amendment claim is intended to address his pre-conviction detention, he has employed the wrong constitutional theory and has failed to state a claim that implicates any Eighth Amendment interests. *See City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244 (1983)("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt.") (alteration in the original).

With regard to his post-conviction confinement, Yagla fails to state a viable Eighth Amendment claim for different reasons. The Supreme Court has admonished that "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny..." *Whitney v. Albers,* 475, U.S. 312, 319 (1986). "'After incarceration, only the unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Id.* (*quoting Ingraham*, 430 U.S. at 670) (ellipsis in the original). "[H]arsh 'conditions of confinement' may constitute cruel and unusual punishment unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Here, the gravamen of Yagla's Eighth Amendment claim appears to be his complaint that he was sentenced to jail time based on the unconstitutional actions of Officer Simon and/or various County prosecutors and/or judicial officials that occurred at or before the time of his trial. These types of allegations are insufficient to state an actionable Eighth Amendment violation. *See Palma v. Atlantic County,* 53 F. Supp. 2d 743, 754 (D.N.J. 1999) ("[T]o the extent that Palma seeks to allege a §1983 claim arising out of Defendants' actions prior to his conviction, Palma fails to state a cognizable claim under the Eighth Amendment.") (citations omitted). "The Eighth Amendment does not provide a cause of action for every criminal defendant whose conviction and sentence has been invalidated on appeal." *Id.* Instead, it "serves to protect prisoners, entrusted to the custody of the state, from abuse by their jailers." *Id.* at 754-55 (citing *Whitley,* 475 U.S. at 318-19). The fact that Yagla was confined pursuant to the state trial court's judgment of conviction and sentence based on unlawfully obtained evidence does not, by itself, render the post-conviction confinement "cruel and unusual."

 In any event, in his brief in opposition to the County's motion, Yagla indicated his intent to withdraw all Eighth Amendment claims against the County. (Pl.'s Br. Opp. Def.'s Mot. Dismiss at 9, ECF No. 65.) Given this representation and the inapplicability of the Eighth Amendment to the facts alleged in the SAC, it is respectfully recommended that Yagla's Eighth Amendment claims against the named Defendants be dismissed in their entirety with prejudice.

3. Yagla's Fourteenth Amendment Claims

The Fourteenth Amendment provides, in relevant part, that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST.

amend. XIV, §1. Here, Yagla asserts violations of both his due process and equal protection rights.

The County argues that Yagla's Fourteenth Amendment due process claims should be dismissed under the "more specific provision rule," which states that, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver,* 510 U.S 264, 273 (1994) (*quoting Graham v. Connor*, 490 U.S. 386, 395 (1989)). The County argues that, because Yagla's averments of wrongdoing implicate specific Fourth Amendment rights, they cannot be prosecuted as Fourteenth Amendment claims. This Court agrees in part.

The Third Circuit Court of Appeals has explained that:

> [t]he boundary between Fourth Amendment and Fourteenth Amendment claims is, at its core, temporal. The Fourth Amendment forbids a state from detaining an individual unless the state actor reasonably believes that the individual has committed a crime—that is, the Fourth Amendment forbids a detention without probable cause. *See, generally, Bailey v. United States*, ——U.S. ——, 133 S. Ct. 1031, 1037, 185 L.Ed.2d 19 (2013). But this protection against unlawful seizures extends only until trial. *See Schneyder v. Smith*, 653 F.3d 313, 321 (3d Cir. 2011) (observing that post-conviction incarceration does not implicate the Fourth Amendment). The guarantee of due process of law, by contrast, is not so limited as it protects defendants during an entire criminal proceeding through and after trial. *Pierce v. Gilchrist*, 359 F.3d 1279, 1285–86 (10th Cir.2004) ("The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." (internal citation omitted)).

*Halsey v. Pfeiffer,* 750 F.3d 273, 291 (3d Cir. 2014).

Here, Yagla appears to be alleging injury due to the entire period that he was confined, both prior to his trial and thereafter. Accordingly, to the extent that Yagla's §1983 claim relates to the period of confinement during or after his trial, the claim is properly analyzed under the 14th Amendment rather than under the 4th Amendment.

Still, this begs the question whether Yagla has proffered averments that state a plausible violation of his federal due process rights. To state a substantive due process claim under §1983, a plaintiff must allege facts that plausibly establish: (1) that the particular interest at issue is protected by the Fourteenth Amendment, and (2) that the government's deprivation of that protected interest shocks the conscience. *Connection Training Serv. v. City of Phila.*, 358 F. App'x 315, 319 (3d Cir. 2009); *see Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir.2001) (substantive due process is violated when state conduct is "arbitrary, or conscience shocking, in a constitutional sense") (internal quotation marks and citation omitted). To state a procedural due process claim, a plaintiff must allege that: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Mulholland v. Government Cty. of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir. 2013).

In this case, the Court's analysis as to whether Yagla has stated a viable due process violation is hindered by the ambiguous nature of his averments. In relevant part, the SAC alleges that Simon's sworn affidavit "withheld detailed information, lacked probable cause and contained false statements/ accusations that were fabricated and misleading to produce probable cause to arrest plaintiff." (SAC, "Legal Claims as for Defendants Officer Simon and the City of Pittsburgh, ¶3.) Yagla claims this falsified affidavit "became the initial motivating factor in prosecution." (*Id.* ¶4.) Further, Yagla claims that "Officer Simons [sic] role in testifying under Oath to the surrounding circumstances of plaintiffs [sic] arrest was malicious and misleading to the fact finder." (*Id.* ¶6.) Yagla has not appended the affidavit in question, nor does he specify in what regard Simon supposedly falsified the affidavit or gave testimony that was misleading to the trial court. Consequently, it is not entirely clear from these allegations whether Yagla is

claiming only that Simon fabricated the circumstances that gave rise to the investigative detention, or whether he is claiming fabrication of the evidence used to support a finding of his guilt. The distinction is important because, in *Halsey, supra,* the Third Circuit held that "if a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted." 750 F.3d at 294. *See also Torres v. McLaughlin,* 163 F.3d 169, 173 (3d Cir. 1998) (noting that a §1983 malicious prosecution claim may include police conduct that violates the due process clause).

Here, the allegations in the SAC suggest that Yagla may not be contesting his possession of the drugs and related paraphernalia. If that is the case, Yagla is likely precluded from stating a viable Fourteenth Amendment due process violation based on his prosecution for the offenses of possession of heroin, possession with intent to deliver heroin, and possession of drug paraphernalia. *See, e.g., Washington v. Hanshaw,* 552 F. App'x 169, 173-74 (3d Cir. 2014) (holding that, where the plaintiff in a §1983 lawsuit was not actually innocent of the drug-related crimes for which he was convicted and sentenced, he did not state a viable substantive due process claim based upon allegations that officers arrested him without probable cause and fabricated the circumstances leading to the arrest; plaintiff's "incarceration for a crime he admits he committed did not deprive him of any liberty interest protected by the substantive due process clause").

However, the Court cannot make a definitive determination in this regard given the present state of the record, which fails to elucidate the nature of the alleged fabrication and/or misleading testimony. As they are currently pled, Yagla's averments relative to Simon's alleged

falsification of his affidavit and/or misleading testimony are, at best, sufficient to suggest a *possible* Fourteenth Amendment violation, but they do not supply sufficient factual content to state a *plausible* violation. *See Iqbal*, 556 U.S. at 680 (distinguishing a conceivable or possible claim from one that is plausible). Because the allegations in the SAC are insufficient to state a plausible due process violation, it is respectfully recommended that the claim be dismissed without prejudice so that Yagla may replead this cause of action.

Nevertheless, notwithstanding this Court's recommendation that Yagla be given a chance to replead his Fourteenth Amendment claim, the Court concludes, pursuant to the authority provided by 28 U.S.C. §1915(e)(2)(B)(ii), that certain aspects of the SAC clearly cannot support the existence of a plausible due process violation. First, Yagla cannot premise his due process claim on the prosecutor's decision, at the behest of Simon, to withdraw a potential plea offer, because "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).

Second, Yagla cannot base his due process claim on the fact that the prosecutor solicited testimony from Officer Scarpane, Simon's "known partner," in the form of Scarpane's answer to a hypothetical question. (SAC, Legal Claims as For Defendant Allegheny County ¶¶ 9-10, ECF No. 52). There is nothing improper in the Commonwealth's use of a hypothetical question to an officer who is testifying in his capacity as an expert witness in the area of drug trafficking. Moreover, to the extent that Officer Scarpane's testimony was potentially biased by virtue of his "known" association with Officer Simon, this matter could have been adequately explored by way of vigorous cross-examination; consequently, the admission of Officer Scarpane's testimony in support of the Commonwealth's case does not involve a deprivation of due process.

Third, Yagla cannot plausibly establish a due process violation based on the allegation that the Commonwealth "maliciously" *nolle prossed* his claim following its unsuccessful petition for appeal to the Pennsylvania Supreme Court.  (SAC, Legal Claims as for Allegheny County, ¶ 12 (alleging that "the DA's role of nolle processing [sic] charges on February 6, 2012 was a malicious act").  Because the *nolle prosequi* was the triggering event for Yagla's release from custody, it is self-evident that this event could not have worked a deprivation of his liberty rights.

Fourth, Yagla cannot assert a viable due process violation based on his allegation that prosecuting attorneys violated the Pennsylvania Rules of Professional Conduct by failing to disclose Simon's testimony concerning when he drew his weapon and "seized" Yagla.  In appropriate circumstances, a §1983 plaintiff can state a viable due process claim based on a violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment.").  *See Gagliardi v. Fisher*, 513 F. Supp. 2d 457, 489-90 (W.D. Pa. 2007) (discussing the elements of a §1983 due process claim based on *Brady* violation).[2]  However, the "Rules of Professional Conduct do not establish constitutional rights, and a violation of the Rules does not equate to a constitutional violation."  *Crane v. Cumberland Cty.*, PA, No. Civ.A. 1:CV–99–1798, 2000 WL 34567277, at *7 n.4 (M.D. Pa. June 16, 2000).

Finally, pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), this Court concludes that the SAC fails to state a plausible violation of Yagla's Fourteenth Amendment equal protection rights.  To state a claim based on an alleged selective enforcement of the law in violation of the equal protection

---

[2] Yagla has not named any individual prosecutors as defendants in this case and, in any event, "[i]t is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence," so long as they did so while functioning in their prosecutorial capacity."  *Yarris v. County of Delaware,* 465 F.3d 129, 137 (3d Cir. 2006).

clause, a plaintiff must show: "(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor ... or to prevent the exercise of a fundamental right." *Suber v. Wright*, 574 F. App'x 207, 211 (3d Cir. 2014) (internal quotation marks and citation omitted). Persons are "similarly situated" for equal protection purposes when "they are alike in all relevant aspects." *Id.* (internal quotation marks and citation omitted). At the motion to dismiss stage, a plaintiff "must allege facts sufficient to make plausible the existence of such similarly situated parties." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011).

In this case, the SAC is devoid of factual content that would support a plausible inference of selective enforcement of the laws. The sole allegation along these lines is Yagla's averment that the judicial official who reviewed Simon's affidavit of probable cause "[knew] or [had] the capability of knowing the surrounding circumstances of plaintiffs [sic] arrest" but "did not act objectively reasonable [sic] in determining probable cause" and "was ignorant to the governing laws of equal protection." (SAC, "Legal Claims as for Defendant Allegheny County," ¶3.) Nowhere does the SAC allege facts that plausibly establish the existence of similarly situated parties who were treated differently from plaintiff on the basis of an arbitrary or unjustifiable standard. Accordingly, Yagla's §1983 claim based on an alleged equal protection violation fails to state a claim upon which relief can be granted and should be dismissed.

4. Yagla's Fourth Amendment Claims

Yagla also alleges violations of his rights under the Fourth Amendment, which provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.  Yagla's Fourth Amendment claims are premised on theories of false arrest and/or false imprisonment and/or malicious prosecution.  The difference between these torts is, again, temporal.  A claim for false arrest or imprisonment covers damages only for the time of detention until the issuance of process or arraignment, and not more.  *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir.1998).  On the other hand, a malicious prosecution claim covers damages for confinement that is imposed pursuant to legal process up until the time of trial.  *Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Halsey,* 750 F.3d at 291 (*citing Schneyder v. Smith,* 653 F.3d 313, 321 (3d Cir. 2011)).

The County contends that all of Yagla's claims were filed outside of the relevant statute of limitations period and are therefore untimely.  Section1983 claims brought in Pennsylvania are governed by the Commonwealth's residual two-year statute of limitations applicable to personal injury actions.  *See McGovern v. City of Phila.*, 554 F.3d 114, 115 n. 2 (3d Cir.2009); *Sameric Corp. of Delaware, Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir.1998).  The County concedes that, because Plaintiff was incarcerated at the time that he filed this lawsuit, he presumably gets the benefit of the "prisoner mailbox" rule, pursuant to which "a document is deemed filed on the date it is given to prison officials for mailing."  *Pabon v. Mahonoy,* 654 F.3d 385, 391 n.8 (3d Cir. 2011).  Because Yagla's original complaint bears a signature date of February 7, 2014, this would appear to be the earliest date on which this civil action could be found to have been commenced.  Consequently, any alleged constitutional injuries occurring to Yagla prior to February 7, 2012, of which he was aware or reasonably should have been aware, are time-barred.  *See Atkin v. Johnson*, 432 F. App'x 47, 48 (3d Cir.2011) (a cause of action

under §1983 accrues when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action) (*citing Sameric Corp.,* 142 F.3d at 599).

Claims for false arrest typically accrue on the date of the arrest because, at that point, the plaintiff has reason to know of the injury. *LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. Pa. 2011) (*citing Montgomery v. De Simone,* 159 F.3d 120, 126 (3d Cir. 1998)). In this case, Yagla's false arrest claim accrued on February 15, 2009, the date of his arrest. Because this claim was filed well beyond the applicable two-year statute of limitations period, it is recommended that the claim be dismissed as untimely.

A claim of false imprisonment is fully accrued once the plaintiff is held pursuant to legal process, such as when the plaintiff is bound over by a magistrate or arraigned on charges. *LeBlanc,* 453 F. App'x at 142 (*citing Wallace v. Kato*, 549 U.S. 384, 389-90 (2007)). Here, the County argues that Yagla's false imprisonment ended no later than February 15, 2009, when bail was set, because the preliminary arraignment would had to have occurred at that point. (*See* SAC Ex. A at p. 2, ECF No. 52-1.) *See also* Pa.R.Crim. P. 540(F)(3) (bail is first set at the preliminary arraignment). However, even if the Court utilizes the date on which Yagla's preliminary hearing occurred and the charges were waived to court (February 24, 2009)[3] or the even later date of his formal arraignment (April 27, 2009),[4] it is clear that Yagla's false imprisonment ended, and any claim for damages accrued, well before February 7, 2012. Accordingly, Yagla's claim for false imprisonment, like his false arrest claim, should be dismissed as time-barred.[5]

---

[3] (*See* SAC, "Statement of Claim" ¶5, ECF No. 52.)

[4] (*See* SAC, Ex. A at p. 1, ECF No. 52-1.)

[5] The Court notes that Yagla's false arrest/imprisonment claims did not depend on a favorable outcome in his criminal proceedings and, therefore, the deferred accrual rule of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), does not apply to those claims. *See Wallace v. Kato,* 549 U.S. 384, 393 (2007) (rejecting the theory that "an action

An action for malicious prosecution under §1983 accrues upon the favorable termination of a criminal proceeding. *Rose v. Bartle,* 871 F.2d 331, 348-51 (3d Cir. 1989); *see Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (to state a Fourth Amendment claim for malicious prosecution under §1983, a plaintiff must demonstrate, among other things, that the underlying criminal proceeding ended in his favor). The County contends that this occurred on February 6, 2012, when the Court of Common Pleas granted the prosecutor's motion to *nolle prosse* Yagla's criminal charges. Because the date of signature on Yagla's initial complaint is February 7, 2014, the County contends that this proceeding could not have been commenced any earlier than that date, making Yagla's malicious prosecution claim untimely.

The Court is not persuaded that this issue can be definitively resolved on the present record. Notably, the SAC avers that, on February 9, 2012, after speaking with his client, Yagla's attorney filed an acknowledgement of the *nolle prosse* order "and the penalty was considered satisfied." (SAC, "Statement of Claim," ¶ 15.) The SAC further avers that Yagla was released from state custody on February 14, 2012 "after being imprisoned threwout [sic] this whole process." (*Id.* ¶ 16.) These averments, when construed in Yagla's favor, could reasonably support an inference that Yagla did not know, or have reason to know, of the *nolle prosse* order prior to February 9, 2012. In that event, the statute of limitations on Yagla's malicious prosecution claim would not have begun to run until that date, making his claim timely. Because

which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside") (emphasis in the original); *Dique v. N.J. State Police*, 603 F.3d 181, 187 (3d Cir.2010)(noting that the Court in *Wallace* "clarified that the *Heck* bar is applicable only when, at the time the § 1983 suit would normally accrue, there is an existing criminal conviction.") (*citing Wallace*, 549 U.S. at 393); *Goodwin v. New Jersey*, Civil No. 12–1040(FLW), 2012 WL 3532894 at *7 (D.N.J. Aug.13, 2012) (holding that *Heck's* deferred accrual rule did not apply to Plaintiff's Fourth Amendment false arrest/imprisonment claim); *Callahan v. Borough of Bristol*, Civil Action No. 11–6977, 2012 WL 3104669 at *3 n. 7 (E.D. Pa. July 31, 2012) ("[B]ecause, under ordinary accrual rules, a claim for false arrest or false imprisonment accrues before there is any conviction, *Heck* does not delay accrual of such claims."); *Hilton v. Kronenfeld*, Civil Action No. 04–6420(SDW), 2008 WL 305276 at *9 (D.N.J. Jan.29, 2008) ("Because a judgment in a § 1983 action for false arrest, illegal search and seizure, false imprisonment, and excessive force would not necessarily imply the invalidity of a conviction or sentence, the *Heck* bar is inapplicable, and these claims accrue the moment the victim knows [ ] or should know of the injury.") (internal footnote omitted).

the Court cannot determine the applicability of the statute of limitations defense on the limited record before it, the Court recommends that Yagla's malicious prosecution claim *not* be dismissed as untimely at this juncture. *See Hickox v. County of Blair*, --- F. App'x ---, No. 14–3113, 2014 WL 5573368, at *3 n.1 (3d Cir. Nov. 4, 2014) (noting that, "[i]n this Circuit, a defendant may assert a statute of limitations defense in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) where it is apparent on the face of the complaint that the claims are time-barred") (*citing Robinson v. Johnson*, 313 F.3d 128, 135 & n. 3 (3d Cir.2002)).

In the alternative, the County moves to dismiss Yagla's malicious prosecution claim on the grounds that the averments in the SAC fail to show that the County had malicious motives or, for that matter, any prosecutorial motive other than bringing Yagla to justice. To state a claim for malicious prosecution under the Fourth Amendment, a plaintiff must allege facts which plausibly establish that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr,* 477 F.3d at 81-82.

This Court is of the view that Yagla's malicious prosecution claim is insufficiently pled under the standards enunciated in *Iqbal* and *Twombly*. Construed in the light most favorable to Yagla, the SAC alleges that Yagla's prosecution was predicated upon Simon's affidavit of probable, which "withheld detailed information, lacked probable cause and contained false statements/accusations that were fabricated and misleading to produce probable cause to arrest plaintiff." (SAC, "Legal Claims as for Defendants Officer Simon and the City of Pittsburgh," ¶¶ 3-4.) The SAC further alleges that "Officer Simon's role in testifying under Oath to the

surrounding circumstances of plaintiff's arrest was malicious and misleading to the factfinder."
(Id. ¶ 5.)  As the Court previously noted, the SAC does not incorporate the allegedly falsified
affidavit, nor does it specify what accusations were "fabricated" by Simon or the manner in
which his testimony was "malicious and misleading."  Insofar as the County is concerned, the
SAC alleges that an unnamed judicial official "knowingly or having the capability of knowing
the surrounding circumstances of plaintiffs [sic] arrest, did not act objectively reasonable [sic] in
determining probable cause."  (SAC, "Legal Claims as for Defendant Allegheny County," ¶3.)
Similarly, the SAC alleges that unnamed prosecutors in the DA's Office, "having knowledge of
the surrounding circumstances in plaintiff's arrest, did not act objectively reasonable [sic]" in
prosecuting Yagla on the "charges as they stood" and "this was a malicious act."  (*Id.* ¶ 6.)

Under the pleading standards annunciated in *Twombly* and *Iqbal,* Yagla's conclusory
allegations of falsification and malice are insufficient to establish a plausible violation of his
Fourth Amendment rights.  Because "the well-pleaded facts do not permit the court to infer more
than the mere possibility of misconduct," *Iqbal,* 556 U.S. at 679, the SAC "has alleged — but it
has not 'show[n]' — 'that the pleader is entitled to relief.'"  *Id.* (*quoting* Fed. Rule Civ. Proc.
8(a)(2)).  It is therefore recommended that Yagla's Fourth Amendment malicious prosecution
claim be dismissed without prejudice so that Yagla may have an opportunity to replead it.
Recognizing, however, that the Fourth Amendment's protection against unlawful seizures
extends only until time of trial, *see Halsey,* 750 F.3d at 291, this Court recommends that leave to
amend be granted only insofar as Yagla's Fourth Amendment malicious prosecution claim is
based on allegedly "malicious" acts occurring prior to trial; the claim should be dismissed with
prejudice to the extent it is premised on allegedly "malicious" acts that occurred at the time of
trial or thereafter.

5.  Municipal Liability

The City and County have each moved for dismissal on the grounds that the SAC fails to establish facts that could support a theory of municipal liability.  This Court agrees that the SAC is deficient in this regard.

A municipality may not be held liable under §1983 for an injury inflicted solely by its employees or agents.  *Santora v. Red Clay Consol. Sch. Dist.,* 580 F. App'x 59, 62 (3d Cir. 2014) ("A municipality may not be liable under §1983 under the theory of *respondeat superior.*") (*citing Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691-92 (1978)).  Instead, a municipality may be liable in a §1983 action for the violation of an individual's federal statutory or constitutional rights only when it implements an official policy or custom that results in a constitutional deprivation.  *See Monell,* 436 U.S. at 694 ("It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983.").  Thus, in order to assert a claim for municipal liability under §1983, a plaintiff must plausibly plead the existence of a municipal policy or custom that caused the alleged violation of his constitutional rights.  *Monell*, 436 U.S. at 694; *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir.2009).

Proving a government policy or custom can be accomplished in a number of different ways.  *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).  Custom, in contrast, can be proven by demonstrating that a given course of conduct,

although not specifically endorsed or authorized by state or local law, is so well-settled and permanent as virtually to constitute law. *Id.* (*citing Fletcher v. O'Donnell*, 867 F.2d 791, 793–94 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence.").  For purposes of establishing municipal liability, "[t]he necessary involvement of the policymaker can be demonstrated either through 'allegations of personal direction or of actual knowledge and acquiescence.'" *Valentin v. Phila. Gas Works,* 128 F. App'x 284, 286 (3d Cir. 2005) (*quoting Andrews v. City of Phila.* 895 F.2d 1469, 1478 (3d Cir. 1990)); *see also  Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir.1996) (noting that, to sustain a § 1983 claim for municipal liability, the plaintiff must "that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury.'") (*quoting Bielevicz v. Dubinon*, 915 F.3d 845, 851 (3d Cir. 1990)).

In this case, Yagla's only averment as to the City is that "the City of Pittsburgh, who employees [sic] Officer Simon, knowingly or having the capability of knowing[,] failed to correct Officer Simon's actions and misconduct pertaining to plaintiffs [sic] arrest.  (SAC, "Legal Claims as for Defendants Officer Simon and the City of Pittsburgh ¶7.)  Yagla's claims against the County are premised on:  (a) the actions of an unidentified "judicial official" who made the initial probable cause determination based on Simon's affidavit of probable cause, and (b) the actions of unidentified prosecutors within the DA's office who prosecuted Simon's complaint up until the point of the eventual *nolle prosse*.  (SAC, "Legal Claims as for Defendant Allegheny County, ¶¶ 2-14.)  Yagla asserts that "Allegheny County Officials and the Allegheny County DA's Office, knowingly or having the capability of knowing the surrounding circumstances of plaintiffs [sic] arrest, did not act objectively reasonable [sic] and [were]

negligent and erroneous [sic] in determing [sic] sufficient probable cause," resulting in the violation of his constitutional rights. (*Id.* ¶15.)

Yagla's §1983 claims against the City and County are deficient in two respects. First, the SAC does not provide sufficient factual matter to establish a plausible violation of Yagla's constitutional rights as a predicate for municipal liability. *See Bittner v. Snyder Cty., PA*, 345 F. App'x 790, 792-93 (3d Cir. 2009) ("It is well settled that before a municipality may be found liable under § 1983, there must be a constitutional violation.") (*citing Monell,* 436 U.S. at 694). Second, the SAC fails to aver sufficient factual content from which a plausible inference can be made that the City and/or County enacted a policy or custom that was the "moving force" behind the allegedly tortious conduct.[6] Accordingly, as currently pled, the SAC fails to state a plausible basis for municipal liability against the City and the County.

The Court notes, however, that, in his brief in opposition to the City's motion, Yagla alludes to prior instances of misconduct on the part of Simon and/or other Pittsburgh police officers that supposedly put the City on notice of the need to appropriately supervise, discipline, and/or train Simon so as to prevent his unlawful abuse of authority in this case. (*See* Pl.'s Br. Opp. Mot. Dismiss ¶¶10-12, ECF No. 63.) Yagla further argues that the City had an institutionalized practice of failing to forward evidence of criminal acts committed by its officers to the District Attorney's office and failing to establish any meaningful departmental system for addressing complaints of police misconduct. (*Id.* ¶12.) Similarly, in his brief in opposition to the County's motion, Yagla alludes to prior misconduct on the part of Simon and/or other city

---

[6] In addition, Yagla's claims against the County are deficient to the extent they are premised on the actions of the unidentified judicial officer who allegedly made an unreasonable probable cause determination. As the County points out, judicial officers are not County employees; rather, they are part of the Commonwealth's unified judicial system and, as such, they are not "persons" amenable to suit under §1983. *See Callahan v. City of Phila.*, 207 F.3d 668, 672-74 (3d Cir. 2000); *Culkin v. Kuhn*, Civil Action No. 13–431, 2014 WL 1414804, at *3 (W.D. Pa. April 11, 2014). Because the County has no supervisory authority over the unidentified judicial officer whose actions are described in the SAC, no municipal liability can attach to the County for the judicial officer's conduct.

police officers that supposedly put the District Attorney's office on notice of the need to: (i) screen Simon's cases for potential inconsistencies or untruthfulness; (ii) train law enforcement personnel, including Simon, and/or otherwise take appropriate measures to prevent law enforcement officers from offering perjurious testimony; and (iii) discontinue the prosecution of cases filed by law enforcement personnel known to be untruthful. (*See* Pl.'s Br. Opp. to Def.'s Consolidated Mot. Dismiss and Strike ¶¶10-12, ECF No. 65.)

In light of these assertions, and out of an abundance of caution, it is recommended that Yagla be granted leave to replead his claims against the City and the County to the extent he can plausibly allege a predicate violation of his constitutional rights. With regard to Plaintiff's claims against the County, however, the Court notes that any potential liability the part of the County which stems from the policymaking authority of the District Attorney is limited to acts involving the DA's administrative functions. Specifically,

> [t]he Third Circuit Court of Appeals has recognized that, under Pennsylvania Law, district attorneys are the chief law enforcement officers for the county in which they are elected. *Carter v. City of Philadelphia*, 181 F.3d 339, 349 (3d Cir.1999). However, district attorneys have a hybrid status; "[w]hen 'enforcing their sworn duties to enforce the law ... they act as agents of the State [but] when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions ... the county prosecutor in effect acts on behalf of the county that is the situs of his or her office.'" *Id*. at 352–353 (*quoting Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir.1996)). In *Carter*, the court held that individual policymakers in the District Attorney's office acted in their administrative role when they failed "to establish training, supervision and discipline policies" that would have prevented long-standing police corruption. [] *Id*. at 353. This failure to train was held to be an administrative, local policy in which the District Attorney was "a local policymaker." *Id*.

*Bergdoll v. City of York*, Civil Action No. 1:08–CV–01879, 2009 WL 3698023, at *4 (M.D. Pa. Nov. 3, 2009) (internal footnote omitted; ellipses in the original). In order to state a viable municipal liability claim based on an alleged failure to train, a pleading must allege facts establishing that the municipality's failure to train "amount[s] to deliberate indifference to the

rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, ––– U.S. ––––, ––––, 131 S.Ct. 1350, 1359 (2011) (second alterations in original) (internal quotation marks and citation omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 1360 (internal quotation marks and citation omitted).

6. <u>Further Amendment</u>

Based on the foregoing discussion, this Court concludes that the SAC fails to state a plausible violation of Yagla's federal constitutional rights for which the moving Defendants can be liable. Nevertheless, before dismissing a §1983 civil rights complaint pursuant to Rule 12(b)(6), a court must allow the plaintiff an opportunity for further amendment, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *See, e.g., Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Similarly, when a complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), the plaintiff should be given leave to amend the complaint with directions as to how to cure the deficiencies, "unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment." *Warren v. Bush*, Civ. A. No. 2:08–cv–00376, 2008 WL 3876885, at *1 (D. Nev. Aug.18, 2008) (citation omitted). *See also Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc*., 482 F.3d 247, 251 (3d Cir.2007) (holding that in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint-regardless of whether the plaintiff requests to do so-when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile.)

Based on its foregoing analysis, the Court finds that further amendment would be futile with respect to Yagla's claims under the Fifth Amendment, as those claims are not cognizable

under §1983 against the named Defendants as a matter of law.  Similarly, further amendment would be futile and/or inequitable with respect to Yagla's Eighth Amendment claims and Fourteenth Amendment equal protection claims because, after three pleading attempts, Yagla has failed to identify any facts that suggest a possible violation of those rights.  With respect to Yagla's Fourteenth Amendment due process claims, further amendment would be futile insofar as the claims are premised on:  (a) the withdrawal of a potential plea offer, (b) the Commonwealth's reliance on Officer Scarpane's testimony; (c) the prosecution's actions in *nolle prossing* Yagla's criminal charges, or (d) the alleged violation of a Rule of Professional Responsibility.  Finally, with respect to Yagla's Fourth Amendment claims, further amendment would be futile as to Yagla's theories of false arrest and/or false imprisonment because those claims are clearly time-barred.  In addition, Yagla cannot state a claim against the County premised on the actions of a judicial officer who made a probable cause determination. Consequently, it is recommended that all of the foregoing claims and theories be dismissed with prejudice.

What remains of the Second Amended Complaint are a possible Fourth Amendment malicious prosecution claim, possible Fourteenth Amendment due process claims based upon the alleged fabrication of evidence and/or a *Brady* violation, and possible municipal liability claims. While these theories are inadequately pled under the *Twombly/Iqbal/Fowler* standard outlined herein, it is respectfully recommended that Yagla be given an opportunity to amend his complaint so as to cure these deficiencies, to the extent he can do so consistent with the pleading

requirements of *Twombly, Iqbal,* and *Fowler* as well as the mandates of Federal Rules of Civil Procedure 8 and 11.[7]

### 7. Plaintiff's Failure to Serve Defendant Simon

Finally, the Court notes that Yagla has not effectuated service on Defendant Simon at any point during this litigation. By order dated November 7, 2014 (ECF No. 62), the Court previously directed Yagla to supply, on or before January 7, 2015, an address at which service could be effectuated on Simon. The Court advised Yagla that his failure to comply with this deadline would result in the issuance of a "show cause" order, whereby Yagla would be directed to show cause as to why the action should not be dismissed against Simon for Yagla's failure to prosecute. Yagla has not provided a valid service address for Simon to date and, therefore, a "show cause" order will be entered contemporaneously with the filing of this Report and Recommendation.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that: (a) the motion to dismiss the Second Amended Complaint filed by the City of Pittsburgh (ECF No. 55) be granted, and (b) the consolidated motion to dismiss and/or to strike portions of the Second Amended Complaint filed by the County of Allegheny (ECF No. 57) be granted as to the County's motion to dismiss and denied as to the County's motion to strike. It is further recommended that Plaintiff's §1983 claims be dismissed *with* prejudice, to the extent they are premised on:

(i)      alleged violations of the Fifth Amendment;

(ii)     alleged violations of the Eighth Amendment;

---

[7] In light of this Court's recommendation concerning the disposition of the County's motions to dismiss, it is respectfully recommended that the County's motion to strike be denied.

(iii)     alleged violations of the Fourteenth Amendment Equal Protection Clause;

(iv)     alleged violations of the Fourteenth Amendment Due Process clause arising from: (a) the withdrawal of a potential plea offer; (b) the Commonwealth's reliance on officer Scarpane's testimony; (c) the *nolle prossing* of Plaintiff's criminal charges; and (d) the violation of a Rule of Professional Responsibility; and

(v)     alleged violations of the Fourth Amendment arising from:  (a) Plaintiff's false arrest; (b) Plaintiff's false imprisonment; and (c) a judicial officer's probable cause determination.

Finally, it is recommended that the following §1983 claims be dismissed *without* prejudice:  (i) Plaintiff's Fourth Amendment malicious prosecution claim; (ii) Plaintiff's Fourteenth Amendment due process claim premised upon an alleged fabrication of evidence and/or *Brady* violation; and (c) Plaintiff's municipal liability claims.

In accordance with the Federal Magistrate Judge's Act, 28 U.S.C. §636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file written objections thereto.  Any party opposing such objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file timely objections will constitute a waiver of any appellate rights.

Dated:  March 3, 2015

s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

cc:     Bart Maverick Yagla, Jr.
        LM 8449
        SCI Mercer
        801 Butler Pike
        Mercer, PA 16137
        *Via First Class U.S. Mail*

        All Counsel of Record
        *Via Electronic Mail*